IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| EDITH R. TAYLOR, | ) | 8:07CV127 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JUAN C. MILLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants Dean C. Miller ("Miller") and Daniel Tanner's ("Tanner") Motion for Summary Judgment.[1] (Filing No. 59.) As set forth below, the Motion is granted.

## I. BACKGROUND

Plaintiff filed her original Complaint in this matter on April 5, 2007. (Filing No. 1.) Thereafter, Plaintiff sought leave and was permitted to amend her Complaint. (Filing Nos. 23 and 30.) Plaintiff amended her Complaint, and served summons and the Amended Complaint on Defendant Wescom Credit Union ("Wescom"). (Filing No. 31.) However, Plaintiff failed to serve process on any other Defendant. (Filing No. 30; *see also* Docket Sheet.)

Wescom filed a Motion to Dismiss and Brief in Support on June 17, 2008. (Filing Nos. 37 and 38.) Because the court lacked personal jurisdiction over

---

[1] Plaintiff names Defendants Juan C. Miller and D. Tanner in the caption of her Amended Complaint. (Filing No. 31 at CM/ECF p. 1.) However, these Defendants assert that their correct names are Dean C. Miller and Daniel Tanner. (Filing No. 55 at CM/ECF p. 1.) For the purposes of clarity, the court will refer to these Defendants by their correct names.

Wescom, Wescom's Motion was granted and Plaintiff's claims against Wescom were dismissed. (Filing No. 44 at CM/ECF p. 4.) However, the court provided Plaintiff an additional 30 days to serve the remaining Defendants. (*Id*.)

Plaintiff served summons and the Amended Complaint on Miller and Tanner. (Filing Nos. 47 and 48.) But, Plaintiff failed to serve process on Defendants Scott Schultz ("Schultz") and John/Jane Doe ("Doe"). (Filing No. 49; *see also* Docket Sheet.) As to Schultz, Plaintiff filed a Motion for Publication in which she requested a court order that Schultz "be served by publication." (Filing No. 45.) On March, 25, 2009, the court denied Plaintiff's Motion for Publication and dismissed Plaintiff's claims against Schultz. (Filing No. 58 at CM/ECF p. 3.) On April 1, 2009, Miller and Tanner filed their Motion for Summary Judgment along with a Brief in Support and an Index of Evidence. (Filing Nos. 59, 60 and 61.) Plaintiff has not filed a response to this Motion. (*See* Docket Sheet.)

The party seeking the entry of summary judgment in its favor must set forth "a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response." *Id.*

Miller and Tanner have submitted a statement of material facts in accordance with the court's Local Rules. However, Plaintiff has not submitted a "concise response" to those facts. Further, Miller and Tanner submitted evidence which was properly authenticated. Plaintiff has not. This matter is deemed fully submitted and

the material facts set forth by Miller and Tanner in their Brief are "deemed admitted" and are adopted below. *Id*.

## II. RELEVANT UNDISPUTED MATERIAL FACTS

1. Between January 19 and January 24, 2007, Plaintiff opened a personal checking account at an Omaha Wells Fargo branch ("Wells Fargo"), deposited $30,000.00 worth of checks written by Leroy Colburn ("Colburn"), and attempted to withdraw some or all of the deposited funds in cash.

2. Because Plaintiff's actions looked like an attempt to defraud Colburn, Wells Fargo contacted Wescom, the credit union that issued Colburn's checks.

3. Wescom informed Wells Fargo that the transaction activity was very unusual for Colburn's account and that the checks would not be honored.

4. Wells Fargo also contacted the Omaha Police Department ("OPD") to report a fraud in progress.

5. Tanner, an OPD officer, responded to the fraud report and interviewed Wells Fargo representative Kim Pierson ("Pierson"), who described the facts and circumstances underlying her suspicion that a fraud was in progress.

6. Tanner relayed Pierson's description to Miller, a detective in the Checks and Fraud Unit in the Criminal Investigation Bureau of the OPD, who directed Tanner to detain Plaintiff and transport her to the Omaha Police Central Station for questioning.

7.  Miller obtained copies of the Colburn checks and spoke to Wescom's loss prevention investigator, Darlene Gonzalez ("Gonzalez"), who indicated that the check activity was highly unusual for Colburn's account.

8.  Gonzalez also informed Miller that Colburn's checks would not be honored because Colburn had instructed Wescom to freeze his account because he felt that he was a victim of fraud.

9.  Miller also contacted Colburn, who stated that he intended to file a criminal complaint against Plaintiff for deceiving him into writing the checks.

10. After gathering and reviewing the information, Miller arrested Plaintiff for theft by deception.

11. Plaintiff does not claim that any force was used during the arrest.

(Filing No. 60 at CM/ECF pp. 3-5; Filing No. 61-11, Attach. 10 at CM/ECF pp. 2-3; Filing No. 61-12, Attach. 11 at CM/ECF pp. 1-2.)

### III. ANALYSIS

#### A. Standard of Review

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). *See also Egan v. Wells Fargo Alarm Servs.*, 23 F.3d 1444, 1446 (8th Cir. 1994). It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Bell v. Conopco, Inc.*, 186 F.3d 1099, 1101 (8th Cir. 1999). In passing upon a motion for summary

judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate the allegations with "'sufficient probative evidence [that] would permit a finding in [their] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)). "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.* Essentially, the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

**B.     Miller and Tanner's Motion**

1.     Legal Standards for Qualified Immunity

Qualified immunity is a question of law to be determined by the court and should ordinarily be decided long before trial. *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). "Public officials, of course, are entitled to qualified immunity from liability for damages under 42 U.S.C. § 1983 if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Domina v. Van Pelt*, 235 F.3d 1091, 1096 (8th Cir. 2000) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In short, "qualified immunity shields a defendant from suit if he or she could have reasonably believed his or her conduct to be lawful in light of clearly established law and the information [that the defendant] possessed." *Smithson v. Aldrich*, 235 F.3d 1058, 1061 (8th Cir. 2000) (citations and quotations omitted). "The qualified immunity standard gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (citations and quotations omitted). Moreover,

qualified immunity is "the usual rule" and state actors will enjoy qualified immunity in all but "exceptional cases." *Foy v. Holston*, 94 F.3d 1528, 1532 (11th Cir. 1996).

The court focuses on two questions to determine whether a state official is entitled to qualified immunity: "(1) whether, after viewing the facts in the light most favorable to the party asserting the injury, there was a deprivation of a constitutional or statutory right; and, if so, (2) whether the right was clearly established at the time of the deprivation such that a reasonable official would understand that their conduct was unlawful . . . ." *Henderson v. Munn,* 439 F.3d 497, 501 (8th Cir. 2006) (citations and quotations omitted). Thus, the "initial inquiry is whether the facts as alleged show that the officers' conduct violated a constitutional right. . . . If the facts do not show a violation, [a court] need not proceed further with the qualified immunity analysis." *Brockinton v. City of Sherwood*, 503 F.3d 667, 672 (8th Cir. 2007).

### 2. Deprivation of a Constitutional Right

Liberally construed, Plaintiff alleges that Miller and Tanner violated her Fourth Amendment right to be free from arrest without probable cause. (Filing No. 31.) "An officer has probable cause to arrest a suspect without a warrant if the 'facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense.'" *Arnott v. Mataya,* 995 F.2d 121, 124 (8th Cir. 1993) (quoting *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979)). The fact that an arrested person is later found innocent is not material. *Arnott,* 995 F.2d at 124.

Although Plaintiff does not specifically allege that Miller and Tanner arrested her without probable cause, she does allege that the bank manager did not have "knowledge" to "allow [Miller and Tanner] to arrest" her. (Filing No. 31 at CM/ECF p. 7.) The court liberally construes this claim as alleging that Miller and Tanner

failed to properly investigate before they arrested her. Where a plaintiff alleges that an officer should have investigated further, a plaintiff must show that the "failure to investigate was intentional or reckless, thereby shocking the conscience." *Brockinton,* 503 F.3d at 672. Negligence in the investigation, or being "ultimately incorrect in his conclusion," does not defeat an officer's qualified immunity. *Id.*

When viewed in Plaintiff's favor, nothing in the undisputed facts suggests that Miller and Tanner failed to properly investigate before they arrested Plaintiff. Miller interviewed multiple witnesses including the victim, Colburn, who thought that Plaintiff had deceived him into investing in bogus businesses and had previously requested a freeze on his account. (Filing No. 60 at CM/ECF pp. 3-5.) Because of these interviews and the information Tanner obtained from Wells Fargo, Miller reasonably believed that probable cause existed to support Plaintiff's arrest. There is nothing before the court showing that Miller or Tanner's investigation was "reckless" to the point of "shocking the conscience." In light of these findings, Plaintiff has not established that Miller and Tanner violated a constitutional right and there is no need to proceed further. Miller and Tanner are entitled to qualified immunity and the federal claims against them are dismissed.

### C. Plaintiff's Claims Against Defendant Doe

Pursuant to the court's October 24, 2008, Memorandum and Order, Plaintiff had until November 24, 2008, to effect service of process on Defendant Doe. (Filing No. 44 at CM/ECF p. 4.) In that Memorandum and Order, the court also warned Plaintiff that if she failed "to effect service of process within [30 days], the claims against the remaining Defendants [including Doe] [would] be dismissed without prejudice and without further notice." (*Id.*) Because Plaintiff failed to comply with the court's orders, the claims against Defendant Doe are now dismissed without prejudice.

### D. Plaintiff's State-Law Claims

Because the court has now dismissed all of Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. *See* 28 U.S.C. § 1367(c)(3). Consequently, Plaintiff's Amended Complaint is dismissed in its entirety, but the court will dismiss the state-law claims without prejudice.

IT IS THEREFORE ORDERED that:

1. Defendants Miller and Tanner's Motion for Summary Judgment (filing no. 59) is granted and Plaintiff's federal claims against them are dismissed with prejudice.

2. Plaintiff's claims against Defendant Doe and Plaintiff's state-law claims are dismissed without prejudice.

3. A separate judgment will be entered in accordance with this Memorandum and Order.

June 2, 2009.                    BY THE COURT:

                                 s/ Joseph F. Bataillon
                                 Chief United States District Judge